ESTATE OF CHARLES P. CAFARO, DECEASED, GRACE CAFARO, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Cafaro v. Commissioner
Docket No. 38608-84
United States Tax Court
T.C. Memo 1989-348; 1989 Tax Ct. Memo LEXIS 347; 57 T.C.M. (CCH) 1002; T.C.M. (RIA) 89348; July 20, 1989; As corrected July 24, 1989; As corrected July 28, 1989 Brent H. Gwillim, and Richard N. Molchan, for the petitioner. Clinton M. Fried, for the respondent. PARKER MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined a deficiency in Federal estate tax in the amount of $ 63,605.96 and an addition to tax under section 6651(a)(1) [1] in the amount of $ 15,901.49 for the estate of Charles P. Cafaro who died in 1978. *348 After concessions, [2] the remaining issue for decision is whether events occurring after the date of death of the decedent may be considered in determining whether certain alleged debts of the decedent are deductible by the estate under section 2053(a)(3) as claims against the estate. FINDINGS OF FACT This case was submitted fully stipulated under Rule 122. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. The decedent, Charles P. Cafaro, died on September 26, 1978, while a domiciliary of Illinois, and the estate of the decedent is being administered in *349 Illinois. Mr. Cafaro's wife, Grace Cafaro, is the executrix of the estate and resided in Peoria, Illinois at the time the petition in this case was filed. On January 20, 1982, Grace Cafaro, as executrix, filed the Federal estate tax return (Form 706) for the estate of the decedent with the Kansas City Service Center of the Internal Revenue Service. On the estate tax return, the following alleged debts of the decedent, among others, were listed as deductions on Schedule K: Person or Entity to
Amount Deducted
Whom Debt Owed
on Return
1. Donna Lowman
$  4,000.00
2. Gary Kailey, Creative Concepts
22,261.66
3. Bloomington Federal Savings
& Loan Association
484,315.28
4. First National Bank of Galesburg
122,411.57
5. National Bank of Petersburg
32,287.12
Total
$ 665,275.63
With regard to the amount allegedly owed to Donna Lowman, Donna Lowman filed a claim in the Circuit Court of the Tenth Judicial Circuit of Illinois, Peoria County, in Probate, (hereinafter referred to as the Probate Court) in the amount of $ 4,000. This amount related to a contract entered into between the decedent and Donna Lowman for the *350 purchase of stock in Executive Centers of America, Inc. On July 5, 1984, Grace Cafaro, as executrix, paid Donna Lowman the sum of $ 2,000 in full satisfaction of her claim. On September 10, 1984, Donna Lowman's claim in the Probate Court was dismissed, pursuant to a Stipulation of Dismissal executed by counsel for the claimant and the estate. On February 2, 1979, Mr. Kailey filed a timely claim in the Probate Court in the amount of $ 22,261.66. This amount was allegedly owed to Gary Kailey for the advertising services of Creative Concepts. In 1980, pursuant to an agreement of the parties in Probate Court, Mr. Kailey's claim was settled by the payment of $ 15,000, and the estate was released from any further obligation. With respect to the amount the decedent allegedly owed to Bloomington Federal Savings & Loan Association, on August 15, 1977, Associates Partnership, Ltd. executed a note on Bloomington Federal Savings & Loan Association's corporate form for $ 750,000, with interest at the rate of 9-1/2 percent per annum. The note stated that "[f]or value received, the undersigned Associates Partnership, Ltd. a limited Partnership organized and existing under the laws of the *351 State of Illinois hereby promises to pay to the order of Bloomington Federal Savings nd Loan Association * * *." The decedent executed the note in his capacity as general partner of Associates Partnership, Ltd. In addition, the decedent and his wife, Grace Cafaro, executed the note in their individual capacities. The money was received by the partnership and not by the decedent or his wife individually. On April 9, 1979, Bloomington Federal Savings & Loan Association filed a claim against the estate in the Probate Court in the amount of $ 484,315.28. This claim was not paid by the estate. The loan was assumed and ultimately paid by Becker Brothers, Inc. on September 28, 1984. On March 30, 1976, the decedent entered into a guaranty agreement with First Galesburg National Bank & Trust. Under that agreement the decedent guaranteed payment of any indebtedness that Executive Centers of America, Inc. might contract with First Galesburg National Bank & Trust, to the extent of $ 200,000. On July 19, 1977, Executive Centers of America, Inc. executed a note for $ 170,000, with interest at the rate of 9-1/2 percent per annum, secured by a real estate mortgage on the corporation's property *352 located in McLean County, Illinois. The decedent and Lawrence C. Shank executed the note in their capacities as president and treasurer, respectively, of Executive Centers of America, Inc. These funds were not received by the decedent in his individual capacity. On April 30, 1979, First Galesburg National Bank & Trust filed a claim against the estate in the Probate Court in the amount of $ 122,411.57. The bank asked that the claim be treated as a claim of the seventh class to protect the rights of the claimant in the event that the primary debtor, Executive Centers of America, Inc., failed to pay and discharge the note. This claim was not paid by the estate; it was paid by the liquidating trust of Executive Centers of America, Inc. on June 10, 1982. The real estate mortgage that was the security for the note was then released, discharged, and quitclaimed back to Executive Centers of America, Inc. On November 19, 1976, Executive Centers of America, Inc. executed a note to the National Bank of Petersburg for $ 50,000, with interest at the rate of 9 percent per annum. The decedent and Lawrence C. Shank executed the note in their capacities as president and treasurer, respectively, *353 of Executive Centers of America, Inc. The decedent and Grace Cafaro also appeared as signatories on the note in their individual capacities. The funds were not received by the decedent or his wife in their individual capacities. On May 7, 1979, the National Bank of Petersburg filed a claim against the estate in the Probate Court in the amount of $ 32,287.12. The bank's claim stated that the decedent "was the Co-signer of a Promissory Note in the total amount of $ 50,000 * * *." The claim was not paid by the estate. On August 14, 1982, Executive Centers of America, Inc. paid off the note. On August 13, 1984, respondent timely mailed a notice of deficiency to petitioner. Respondent increased petitioner's taxable estate by $ 707,488.06 due principally to the disallowance of certain debts deducted on Schedule K of the Federal estate tax return, including the debts remaining in dispute in this case. Respondent later conceded that with respect to the amount claimed by Donna Lowman, $ 2,000 was deductible by petitioner and with respect to the amount claimed by Gary Kailey, $ 15,000 was deductible by petitioner. Respondent also determined an addition to tax under section 6651(a)(1) *354 due to the fact that the Federal estate tax return was not filed within the time prescribed by law, and petitioner did not show that the failure to file on time was due to reasonable cause and not due to willful neglect. The parties agree that in the event this Court determines that there is a deficiency in estate tax due from petitioner, then the addition to tax as provided by section 6651(a)(1) is applicable. OPINION Section 2053(a)(3) provides for a deduction from the gross estate for "claims against the estate * * * as are allowable by the laws of the jurisdiction * * * under which the estate is being administered." In regard to deduction of estimated amounts, section 20.2053-1(b)(3), Estate Tax Regs., provides as follows: An item may be entered on the return for deduction though its exact amount is not then known, provided it is ascertainable with reasonable certainty, and will be paid. No deduction may be taken upon the basis of a vague or uncertain estimate. * * * As to deductions for claims against the estate, section 20.2053-4, Estate Tax Regs., generally provides that: The amounts that may be deducted as claims against a decedent's estate are such only *355 as represent personal obligations of the decedent existing at the time of his death, whether or not then matured, and interest thereon which had accrued at the time of death * * *. Only claims enforceable against the decedent's estate may be deducted. * * * [Emphasis supplied.] The purpose of allowing claims against the estate as deductions from the gross estate is to assure that the estate tax is imposed only on the net estate, i.e., on what actually passes in value from the dead to the living. ; , affd. . The deduction is limited to those claims that are valid and enforceable under the laws of the jurisdiction in which the estate is administered. , revd. on an issue of Indiana law, initially without published opinion , but then published in full ; . *356 [3] For a claim to be valid, there must be an assertion of a right and the right to assert the claim must not have been relinquished or abandoned. , affd. , cert. denied . Petitioner relies upon , in which the Supreme Court held that for purposes of determining the value of the deduction for a charitable remainder, a life tenant's premature death could not be substituted for the actuarial computation of the life tenant's life expectancy at the date of the decedent's death. The Supreme Court stated that "[t]he *357 estate so far as may be is settled as of the date of the testator's death." The cases are seemingly divided on how Ithaca Trust Co. applies to other deductions, especially deductions for claims against the estate. Several cases have suggested that , stands for the proposition that no events after the decedent's death are considered when determining a claim's validity and value. ; ; ; ; . Other cases have suggested that the language in , does not stand for the broad proposition that evidence of events occurring after the decedent's death is never admissible. , *358 cert. denied ; , affd. . These cases have determined that events that occurred after the decedent's death can be considered when determining specifically if a claim against the estate is valid. , affg. ; , revg. a Memorandum Opinion of this Court; , cert. denied ; ; . These cases say that Congress only intended to allow claims that were presented and actually paid to be deducted for Federal estate tax purposes, rather than claims that the estate was never required to pay. ; . *359 Other cases have narrowed this determination and found that events after the death of the decedent are to be considered if the liability of the estate is uncertain due to the potential nature of the claim, the estate disputes its liability, or no claim was actually presented. ; [4]; ; ; . Thus, when an estate disputes the claim and later compromises or settles it with the claimant for a lesser amount, only the lesser amount is deductible as a claim against the estate. , affd. by unpublished order (6th Cir. 1947). In addition, an unmatured, potential claim that never becomes a personal liability cannot be deducted by the estate. , affd. . *360 Both this Court and the U.S. Court of Appeals for the Seventh Circuit, to which any appeal in this case would lie, have acknowledged the existence of the seeming conflict among the courts as to how to apply the principle of , and no doubt both courts will continue to grapple with the issue in varying factual contexts in the future. See , affd. [5] and , revg. on an issue of Indiana law . *361 This Court has recognized the confusion and difficulties in this entire area of evidence of post-death events. [6] In sorting out the cases and seeking a unifying thread, we have found two broad categories of cases: (1) valuation cases where value is to be determined as of the date of death without regard to postdeath events and (2) enforceability cases where claims against the estate are only potential, unmatured, contingent, or contested at date of death so that of necessity courts must look to post-death evidence. . For valuation issues, post-death events such as the death of the life tenant normally are simply not relevant. *362 The Seventh Circuit, in a valuation case, has recognized that the principle of , is essentially a rule of relevance. See , where in a valuation case evidence of post-death sales of property occurring within a reasonable period after death was relevant and admissible notwithstanding the Ithaca Trust Co. principle. As we stated in another valuation case, : Unfortunately, much confusion and diversity of views have arisen since Ithaca Trust as a result of overly simplistic attempts to formulate a rule that post-death events can never be taken into account, and Ithaca Trust has been distinguished in certain situations. Thus, it became necessary to consider post-death events in cases involving deductions for debts of the decedent where the creditor had only a potential, unmatured, contingent, or contested claim that required further action or clarification before it became a fixed obligation of the estate that was payable under applicable *363 State law. The Thompson, Courtney, and Hagmann cases referred to above are typical of such cases. When the principle of Ithaca Trust Co. is applied to deductions for claims against the estate under section 2053(a)(3), post-death evidence is excluded only where the claims are for "sums certain" and where the claims are "legally enforceable as of the date of death." ; see n.4, supra; semble Thus, even in Propstra v. United States, the Ninth Circuit agreed that: The law is clear that post-death events are relevant when computing the deduction to be taken for disputed or contingent claims. See Treas. Reg. § 20.2053-1(b)(3) ("No deduction may be taken on the basis of a vague or uncertain estimate."). See also , affd. (9th Cir.), cert. denied, . Less certain is the relevance of post-death events with regard to claims that are certain and enforceable *364 at the time of death. [.] Thus the rule of law in Propstra excluding post-death events was expressly limited to situations "when claims are for sums certain and are legally enforceable as of the date of death." . Propstra is one of the lines of cases that the Seventh Circuit referred to but did not rule on in . However, we think the present case does not involve either a sum certain or a claim that was legally enforceable at the date of the decedent's death. In this case such facts simply have not been established. Here the disputed debts were only potential, unmatured, contingent, or contested claims. We conclude, from our review of the facts below, that evidence of post-death events is relevant here. In this case, petitioner asks the Court to approve as deductions from the taxable estate claims that have not been and never will be paid by the estate. In the case of Donna Lowman's claim, the only evidence of her claim is her petition to the Probate Court in the amount of $ 4,000. Petitioner offered no evidence to prove that *365 the $ 4,000 claim in the Probate Court was for a sum certain and legally enforceable on the date of the decedent's death. Although petitioner did not present any evidence to suggest insolvency of the estate or any inability of the estate to pay decedent's proper debts, Grace Cafaro as executrix settled the claim with Ms. Lowman for half of the claim presented to the Probate Court. This settlement indicates that, rather than being a claim for a sum certain legally enforceable at the date of the decedent's death, the claim was potential, unmatured, contested, or contingent at the date of the decedent's death. Thus, we conclude that post-death events can be considered to determine the enforceability and value of Ms. Lowman's claim. In this case no amount was ever proved owing to Ms. Lowman. However, the estate settled the claim for the amount of $ 2,000, and this amount was actually paid to Ms. Lowman by the estate. Petitioner seeks to deduct the full $ 4,000. Respondent now agrees that petitioner is entitled to deduct $ 2,000 of this claim. Since this amount of $ 2,000 was actually paid to Ms. Lowman, we sustain the deduction of Ms. Lowman's claim to the extent of $ 2,000. *366 The only evidence of Gary Kailey's claim in the amount of $ 22,261.66 was his petition to the Probate Court. Petitioner offered no evidence to prove that the $ 22,261.66 claim in the Probate Court was valid and legally enforceable on the date of the decedent's death. As with Ms. Lowman's claim, despite the lack of evidence of insolvency of the estate or any inability of the estate to pay decedent's proper debts, Grace Cafaro as executrix also settled this claim. The settlement of Mr. Kailey's claim for $ 15,000 indicates that at the date of the decedent's death, rather than being a claim for a sum certain that was legally enforceable, his claim was potential, unmatured, contested, or contingent. Thus, post-death events, such as the settlement of the claim for less than the amount petitioned to the Probate Court, may be considered to determine whether the claim was in fact for a sum certain and legally enforceable at the date of the decedent's death. There is simply no evidence that the $ 22,261.66 was owing to Mr. Kailey; the estate settled the claim for $ 15,000 and paid him that lesser amount. Petitioner seeks to deduct the full $ 22,261.66. Respondent now agrees that petitioner *367 is entitled to deduct the settlement figure of $ 15,000. Since this amount of $ 15,000 was actually paid to Mr. Kailey, we sustain the deduction of Mr. Kailey's claim to the extent of $ 15,000. When the claims against the estate are based on the fact that the decedent acted as a guarantor or an accommodation party for the debts of another who has not defaulted, such claims are considered unmatured, potential claims, a secondary rather than a primary liability. . Thus, when the decedent is a guarantor for the debts of another, events that occurred after the decedent's death and that affected that secondary liability are considered by the courts. ; ; . In Illinois, a guaranty contract is extinguished when the primary obligor is released from the liability, since there is no longer any obligation to guarantee. . *368 Events after the death of the decedent may be considered to determine whether an obligation exists and how much of it can be deducted from the guarantor's estate. . The reasoning behind this is that if two guarantors to the same note died at the same time and outside events were not considered to determine whether the estate was actually required to pay the claim, both guarantors would be able to deduct this same debt from their taxable estates, neither of whom might actually ever pay the claim. With regard to the loans as to which the decedent signed his name along with either Associates Partnership, Ltd. or Executive Centers of America, Inc., petitioner claims that the decedent was the co-maker on the loans rather than the guarantor and so the estate may deduct the full amount of the claim. A guarantor or an accommodation maker is a party who signs an instrument in any capacity for the purpose of lending his name to it. Ill. Rev. Stat. ch. 26, par. 3-415(1) (1965); . *369 The intent of the parties is the significant factor in determining whether the party is an accommodation party, and if no intent is expressed, the purpose or use of the instrument is a significant element. ; . When a party receives no direct benefit from the execution of a note, including the fact that the party is not the one to whom the proceeds are given, that party will likely be considered an accommodation party. ; . The fact that the party may sign the note where makers normally sign does not mean that the party is not an accommodation party. In this case the decedent acted as a guarantor with respect to the debts owed to Bloomington Federal Savings & Loan Association, First Galesburg National Bank & Trust, and the National Bank of Petersburg. *370 With regard to the note to Bloomington Federal Savings & Loan Association, the note was executed by Associates Partnership, Ltd., with the decedent signing as general partner of Associates Partnership, Ltd. The decedent, who was joined by his wife, signed a second time in his individual capacity. There was no indication on the face of the document as to whether the decedent and his wife were signing as co-makers or guarantors. However, Associates Partnership, Ltd. was the only party that received the proceeds from the note. Thus, we find that the decedent and his wife were guarantors rather than co-makers since the decedent and his wife did not receive any direct benefit from the execution of the note. With regard to the amount owed to First Galesburg National Bank & Trust, the decedent entered into a guaranty agreement with the bank regarding any indebtedness of Executive Centers of America, Inc. That guaranty agreement was executed prior to the execution of the note in question. When Executive Centers of America, Inc. did execute the note with First Galesburg National Bank & Trust, the decedent executed the note solely in his capacity as president of Executive Centers of *371 America, Inc. Only Executive Centers of America, Inc. received the proceeds from the note and was referred to by the bank as the primary debtor. In this instance there can be no question that the decedent acted as the guarantor of the note as stated in the prior guaranty agreement. With respect to the note that Executive Centers of America, Inc. executed with the National Bank of Petersburg, the decedent again signed the note in his capacity as president of Executive Centers of America, Inc. However, the decedent and his wife also signed in their individual capacities. Although the National Bank of Petersburg's claim in the Probate Court recited that the decedent was a co-signer , the decedent did not receive any proceeds from the note in his individual capacity. Since the decedent and his wife did not receive any direct benefit from the execution of the note, we conclude that they were guarantors of the note rather than co-makers. Since the decedent acted as a guarantor with regard to the three bank loans with respect to which the parties primarily liable had not defaulted, these claims are unmatured, potential claims. We conclude that events after the decedent's death may *372 be considered to determine the validity and enforceability of the claims and how much, if any, may be deducted as a claim against the estate. Although the claims on the above three notes were timely filed in the Probate Court, there is no evidence that any of the primary obligors ever defaulted on the debts and all three notes were paid by someone other than petitioner. The note from Bloomington Federal Savings & Loan Association in the amount of $ 484,315.28 was assumed and ultimately paid by Becker Brothers, Inc. The note from First Galesburg National Bank & Trust in the amount of $ 122,411.57 was paid by the liquidating trust of Executive Centers of America, Inc. The note from the National Bank of Petersburg in the amount of $ 32,287.12 was paid off by Executive Centers of America, Inc. Thus, petitioner did not spend a single penny of the estate's funds paying off any of these claims. Although petitioner has not and will never pay any of these bank loans, petitioner seeks a deduction for the full amounts as claims against the estate under section 2053(a)(3). While , could perhaps be read *373 as supporting petitioner's argument, we think any such reliance would be misplaced. In Estate of Mackey the decedent guaranteed up to $ 100,000 of the indebtedness of Marco Products (Marco) to Freedom Savings Bank (bank). Marco borrowed $ 200,000 from the bank, payable in monthly installments, with a final balloon payment. In the guaranty agreement with the bank, the decedent waived all conditions regarding protest, presentment, and notice of dishonor and default. After the decedent died, the bank, within the six-month statutory period for filing claims, gave notice to the estate of a claim based on the guaranty, but at that time there had been no default by the primary debtor, Marco. Shortly after the six-month statutory period for filing claims expired, Marco defaulted on a monthly installment payment. The bank, as permitted by the loan terms, accelerated payment and demanded payment in full of all principal and interest owing on the loan. The bank then filed a claim in the probate court for allowance of a $ 100,000 claim against the decedent's estate based on the guaranty. The executors objected, arguing that the claim remained contingent during the six-month statutory *374 claims period. The bank argued that the claim was allowable against the estate as a claim on an absolute liability that was not yet due. Ill. Rev. Stat. ch. 110-1/2, par. 18-4 [formerly par. 18-2] (1981). The probate court allowed the claim, on the ground that while the decedent's liability remained contingent during the entire statutory period, it could nonetheless be asserted since the estate remained open after the guaranty ceased to be contingent, i.e., after Marco's default. The Appellate Court of Illinois, First District, affirmed the probate court, but on a different ground. The Appellate Court rejected the idea that the claim was a contingent claim that did not become absolute until the default on the underlying debt. The Appellate Court relied on , in which the Illinois Supreme Court set out the definitive distinction between contracts guaranteeing collection and contracts guaranteeing payment, definitions now codified in Illinois law. [7] The Illinois Supreme Court held () that: A contract guaranteeing the payment of a note or a debt is an absolute contract, and by *375 it the guarantor undertakes, for a valuable consideration, to pay the debt at maturity if the principal debtor fails to do so, and upon it, if the debt is not paid at maturity, the guarantor may be sued at once. * * * and [the guarantor] must be regarded as an original promisor, who was himself bound to pay the notes when they matured, and his duty was, on their maturity, to go the holder and take them up * * * [Emphasis supplied.] Thus in Estate of Mackey, the Appellate Court of Illinois applied this definition, and held the guaranty was not a contingent liability but was an absolute liability of the guarantor, even though the liability under the guaranty did not accrue until after *376 the statutory claim period and the amount of the guarantor's liability was being reduced during the limitation period by Marco's payments on the note. It follows that the claim based on the guaranty was an allowable claim against the guarantor's estate. The claim is not rendered contingent because liability may be dependent on the maker's default on the note or because payment on the guaranty might never be necessary if the note is paid prior to maturity * * * [.] Assuming that the Appellate Court has correctly distinguished between a contingent liability [8] and an absolute liability in that case, we think Estate of Mackey does not support petitioner's argument. *377 The Illinois Supreme Court, in , held that the guarantor's obligation was to pay the debt at maturity "if the principal debtor fails to do so." In Estate of Mackey there had been such a failure of the primary or principal debtor to pay. Marco had defaulted on an installment payment, and the bank had the right to and did accelerate payment and demand full payment on the loan. In the present case, there is no evidence that any of the primary or principal debtors ever defaulted on the loans the decedent guaranteed. In Estate of Mackey, if Marco had continued to make the installment payments on the debt and if there had been no default, there is no suggestion that the bank would have been allowed a $ 100,000 claim against the estate under Illinois law. If Marco had paid all but $ 50,000 of the $ 200,000 loan before default, there is nothing in the Appellate Court's opinion to suggest that the bank would have been allowed a $ 100,000 (the full amount of the guaranty) claim against the decedent's estate under Illinois law. To bring the matter even closer to the facts of the present Tax Court case, if Marco had paid the entire *378 $ 200,000 debt, there is nothing in Estate of Mackey to suggest that the bank would have been allowed a $ 100,000 claim against the decedent's estate under Illinois law. The Appellate Court construed the guaranty agreement as "an absolute liability of the guarantor," but its opinion nowhere suggests that in a situation where there has been no default and where the principal debtor is paying or has paid the debt that the bank would still have an "allowable" claim against the estate under the guaranty agreement for the full amount of the guaranty. On the contrary, the Appellate Court specifically referred to the fact that the amount of the guarantor's liability was being reduced by Marco's payments. If the principal debtor's liability on the loan were reduced to zero, as in this tax case, then the guarantor's liability, whether previously deemed to be "contingent" or "absolute," would no doubt also be zero. Under petitioner's theory, Marco could have paid off the entire $ 200,000 debt owed to the bank, and the bank would still have a claim of $ 100,000 (the full extent of the separate guaranty agreement) against the estate "allowable" under the state law. We do not think that *379 is either the Illinois law or the Federal tax law. Petitioner may not deduct any of the claims of Bloomington Federal Savings & Loan Association, First Galesburg National Bank & Trust, and the National Bank of Petersburg. We conclude that these claims are not "allowable" under the law of Illinois (sec. 2053(a)(3)), and do not represent personal liabilities of the decedent existing and enforceable at the time of his death (sec. 20.2053-4, Estate Tax Regs.). To reflect the parties' concessions and the foregoing holdings, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect on September 26, 1978, the date of the decedent's death, and all "Rule" references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner concedes respondent's adjustments with regard to a partnership interest, administrative expenses, and the marital deduction, as well as debts allegedly owed to Associates Partnership, Ltd., the law firm of Sutkowski and Washkuhn, and Grace Cafaro. Respondent concedes the debt owed to Gretchen Nelson in the increased amount of $ 16,312. With regard to the adjustment for closely held stock, the parties agree that the value of decedent's interest in Executive Centers of America stock as reported on the estate tax return should be increased by $ 17,525.↩
3. The determination of whether a note is enforceable in the proper jurisdiction often depends upon whether the claim has been filed properly in that jurisdiction and whether the time under the applicable statute of limitations has expired. See , affd. ; .↩
4. The Ninth Circuit also held, however, that in computing the deduction for certain and enforceable claims: We rule that, as a matter of law, when claims are for sums certain and are legally enforceable as of the date of death, post-death events are not relevant in computing the permissible deduction. [.]↩
5. See also for a thorough discussion of the issue.↩
6. In , we noted that "all of the cases in this field dealing with post-death evidence are not easily reconciled with one another, and at times it is like picking one's way through a minefield in seeking to find a completely consistent course of decision in this area." In , the court noted the conflicting lines of argument and stated that "[w]e have no desire to attempt to formulate a hard and fast rule for a matter which is so readily susceptible to and so obviously yearning for legislative clarification." While we share the yearning for certainty in this area, we are not persuaded that a legislative solution is possible or desirable. We see the problem as an issue of relevance which trial judges must wrestle with depending upon the context and the facts of the particular case.↩
7. See Ill. Rev. Stat. ch. 26, par. 3-416 (1965); . This distinction is significant as to the nature of the guarantor's obligations once a default by the primary or principal debtor has occurred. With an absolute liability (guarantee of payment), the creditor can after the default go directly against the guarantor without first getting a judgment and trying to collect from the principal debtor.↩
8. A "contingent claim" is defined in , as "one in which liability is dependent upon the uncertain occurrence of a future event, the happening of which is not within the control of either party." This is the established definition of the term under Illinois law. ; . It would seem that the default of Marco could be viewed as an uncertain occurrence of a future event the happening of which was not within the control of the parties to the guaranty agreement (the decedent and the bank).↩